UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at LEXINGTON

CIVIL ACTION NO. 5:09-cv-387-KKC

MICHELLE TEMPLE,                                                                                             PLAINTIFF

v.                     **MEMORANDUM OPINION & ORDER**

KENNETH AARON PFLUGNER and
STRYKER SALES CORPORATION,                                       DEFENDANTS

\* \* \*   \* \* \*   \* \* \*   \* \* \*

This matter is before the Court on Defendants' motion for summary judgment [DE 26]. This motion has been fully briefed and is ripe for review. For the reasons set forth below, the Court will grant the motion in part and deny it in part.

**I.    FACTUAL BACKGROUND**

On June 16, 2008, Stryker Endoscopy, a division of Stryker Sales Corporation, hired Michelle Temple as an at-will sales associate to assist Kenneth Aaron Pflunger, a sales representative who sold Stryker Endoscopy equipment to various hospitals and medical centers in the Lexington, Kentucky area. Temple claims that throughout her time at Stryker, she was subjected to unwelcome, crude, and offensive sexual comments and advances by Pflunger.

Temple testified that Plunger constantly made sexually charged comments about her body, told her that sex sells and that she should wear her clothes tightly, told her that he would terminate her if she ever gained weight or cut her hair, and told her that she should have sexual relations with a doctor if she wanted to expand one of Stryker's accounts. DE 30, Temple Depo., pgs. 340-45; DE 29, Temple Depo., pgs. 237-38. Temple also testified that on a daily basis, Pflunger asked her why she would not have sex with him, but Temple "wouldn't give in" to Pflunger's sexual advances or dignify them with a response. DE 30,

Temple Depo., pgs. 252, 263-64. However, Temple did testify that she repeatedly responded to Pflunger's sexually charged comments by telling him "enough," or "stop," or by throwing her hands up. DE 30, Temple Depo., pgs. 460-63.

Temple testified that on August 11, 2008, she complained about Pflunger's conduct to Brad Fortune, Pflunger's supervisor, and requested a transfer. DE 29, Temple Depo., pgs. 200-06; DE 30, Temple Depo., pg. 357. Temple testified that Fortune told her that "he would handle it," but never told her to contact human resources and never told her how he would resolve the situation. DE 29, Temple Depo., pg. 206. Temple then testified that when Pflunger found out that she had complained to Fortune, Pflunger threatened to "pound her [expletive] head in," told her that if she reported his conduct again she would not have a job, and cursed at her, before damaging her car with a medical instrument. DE 30, Temple Depo., pgs. 351-60.

Temple testified that after Pflunger's conduct continued, she complained to Fortune again on September 5, 2008 and requested a transfer. DE 29, Temple Depo., pgs. 194-95; DE 30, Temple Depo., pg. 357. Temple testified that when Pflunger found out that Temple had again complained to Fortune, Pflunger ran towards her, screaming "You [expletive] bitch and [expletive], I told you last time not to say anything to Brad. I have been with this company 5 years and I am the 2nd top billing sales rep. . . . if you are trying to take over my territory it will never happen. I will pound your [expletive] head in and kill you." DE 6; DE 30, Temple Depo., pg. 360. Temple testified that Pflunger again damaged her car with a medical instrument. DE 6; DE 30, Temple Depo., pgs. 352.

Temple then testified that in October 2008, Pflunger "flew at [her]" and cursed at her for having her hair cut. DE 30, Temple Depo., pgs. 377. Finally, Temple testified that Pflunger's sexually charged comments continued until she was terminated on October 24, 2008 due to what Fortune called her "personality conflict" with Pflunger. DE 30, Temple Depo., pgs. 303, 385-88.

Defendants dispute much of Temple's testimony and argue that Temple was actually terminated

2

because of various alleged performance issues, including her lack of knowledge and expertise regarding Stryker Endoscopy equipment and surgical procedures, complaints Pflunger received from Stryker customers and employees regarding Temple's operating room behavior, and Temple's lack of professionalism and suitability for her position. DE 26, pgs. 18-19, 21 (citing various depositions and affidavits). Defendants also claim that the "final straw" was Temple's failure to properly clean and sterilize a Stryker hysteroscope resulting in probable permanent damage to the equipment. DE 26, Exh. B-2, Pflunger Depo., pgs. 122-24; DE 26, Exh. K, Pflunger Aff. ¶ 17.

Temple argues that her performance was not the true reason for her termination, emphasizing the fact that she never received any oral or written warnings about her alleged substandard performance and never had any negative action taken against her because of her performance. In fact, Temple even testified that Pflunger told her she was awesome and thanked Temple. DE 30, Temple Depo., pg. 452. Temple also testified that the alleged "final straw" incident never happened and that she never gave Pflunger a hysteroscope without cleaning it. DE 29, Temple Depo., pgs. 172-73.

On March 12, 2009, Temple filed a charge of discrimination with the Lexington-Fayette Urban County Human Rights Commission against Stryker and on September 24, 2009, the Commission issued her a "right to sue" letter. DE 26, Exh. A, PDF pgs. 58-59 (Exh. 31 and 32). Temple then filed this action, asserting various claims against Stryker and Pflunger concerning her termination. After a period of discovery, Defendants moved for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED R. CIV. P. 56(a). The movant can satisfy its burden by demonstrating an absence of evidence to support the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). To survive summary judgment,

the non-movant must come forward with evidence on which the jury could reasonably find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The non-movant must present more than a mere scintilla of evidence to defeat a motion for summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989). The Court must view all of the evidence in the light most favorable to the party opposing summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. ANALYSIS

#### A. KCRA/Title VII Claims

Temple asserts four claims under the Kentucky Civil Rights Act ("KCRA") and Title VII of the 1964 Federal Civil Rights Act [DE 6]. Although it is not clear from her Complaint, Temple states that these claims are brought only against Stryker [DE 27, pg. 22]. The Court will consider each of these claims in the order in which they appear in Temple's Complaint [DE 6]. Since the KCRA is similar to Title VII, the Court will interpret these claims consistently. *See Ammerman v. Bd. of Ed. of Nicholas Cnty.*, 30 S.W.3d 793, 797-98 (Ky. 2000); *Spees v. James Marine, Inc.*, 617 F.3d 380, 389 (6th Cir. 2010).

##### 1. Quid Pro Quo Sexual Harassment Claim

Temple first asserts a quid pro quo sexual harassment claim against Stryker. To establish a prima facie case of quid pro quo sexual harassment, Temple must demonstrate: (1) that she was a member of a protected class; (2) that she was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors; (3) that the harassment complained of was based on sex; (4) that the employee's submission to the unwelcomed advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment; and (5) the existence of respondeat superior liability. *Kauffman v. Allied Signal, Inc.*, 970 F.2d 178, 186 (6th Cir. 1992). For purposes of Temple's motion for summary judgment, Stryker only

4

argues that Temple has produced no evidence on the fourth element. However, the record indicates otherwise.

Temple testified that on a daily basis, Pflunger asked her why she would not have sex with him, but Temple "wouldn't give in" to Pflunger's sexual advances or dignify them with a response. DE 30, Temple Depo., pgs. 252, 263-64. Temple testified that she complained about Pflunger's conduct to Fortune on August 11, 2008 and September 5, 2008 and even requested a transfer. DE 29, Temple Depo., pgs. 110, 194-206. Temple testified that when Pflunger found out that she had complained to Fortune, he threatened her and damaged her car with a medical instrument. DE 30, Temple Depo., pgs. 351-60. Temple then testified that in October 2008, after Pflunger cursed at her for having her hair cut, Pflunger's sexually charged comments continued until she was terminated due to what Fortune called her "personality conflict" with Pflunger. DE 30, Temple Depo., pgs. 303, 385-88.

Construing this evidence in the light most favorable to Temple, the Court finds that a reasonable jury could find that Temple's refusal to submit to Pflunger's sexual demands resulted in her termination. The Sixth Circuit has said that "[i]t is the essence of *quid pro quo* harassment that the employee was subjected to unwelcome sexual advances by a supervisor and her reaction to these advances affected tangible aspects of her compensation, terms, conditions, or privileges of employment." *Kauffman*, 970 F.2d at 187 (internal citations and quotations omitted). Although Temple admits that Pflunger never explicitly told her that she would be fired if she did not have sex with him, based on Temple's testimony, a reasonable jury could find that Temple was subjected to unwelcome sexual advances by Pflunger and her reaction in both rebuffing these advances and reporting Pflunger's conduct to Fortune resulted in her termination. Therefore, there is enough evidence on the fourth element of Temple's quid pro quo sexual harassment claim for that claim to survive summary judgment.

### 2. Hostile Work Environment Claim

Temple next asserts a hostile work environment claim against Stryker. To establish a prima facie case, Temple must demonstrate: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment created a hostile work environment; and (5) employer liability. *Ladd v. Grand Trunk W. R.R.*, 552 F.3d 495, 500 (6th Cir. 2009). Stryker argues that Temple's claim fails as a matter of law because Temple cannot establish either that Pflunger's conduct was unwelcome or that Pflunger's conduct created a hostile work environment. The Court disagrees.

As to whether Pflunger's conduct was unwelcome, Temple testified that she repeatedly responded to Pflunger's sexually charged comments by telling him "enough," or "stop," or by throwing her hands up. DE 30, Temple Depo., pgs. 460-63. Although Temple concedes that she did not report Pflunger's comments to Stryker's human resources department, she testified that she complained to Fortune on multiple occasions and even requested a transfer, further demonstrating that Pflunger's conduct was unwelcome. DE 29, Temple Depo., pgs. 110, 194-206. While Stryker cites evidence that Temple made sexually charged comments about doctors and other Stryker employees, this does not prove that Temple somehow welcomed Pflunger's conduct. Instead, this evidence goes to the credibility of Temple's testimony, which a jury can consider. For these reasons, a reasonable jury could find that Pflunger's conduct was unwelcome.

In considering whether Plunger's alleged harassment was sufficiently "severe or pervasive" to constitute a hostile work environment, the Court must examine the totality of the circumstances. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993); *Williams v. General Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999). Factors that courts consider include: (1) the frequency of the conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the

conduct unreasonably interfered with the employee's work performance. *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999). Ultimately, the harassing behavior must be "severe or pervasive" enough to create an environment that a reasonable person would find objectively hostile or abusive, and that the employee subjectively regarded as hostile or abusive. *Harris*, 510 U.S. at 21-22.

As to the frequency of Pflunger's conduct, Temple testified that during her four months at Stryker, Pflunger made sexual comments "constantly," "daily," and "weekly." DE 30, Temple Depo., pgs. 341, 345-46, 350, 364, 372. This distinguishes Temple's case from the *Bowman* and *Black* cases cited by Stryker. *See Bowman v. Shawnee State Univ.*, 220 F.3d 456 (6th Cir. 2000); *Black v. Zaring Homes*, 104 F.3d 822 (6th Cir. 1997). In *Bowman*, the Sixth Circuit found that five incidents of harassing conduct occurring over a five-year period did not constitute severe or pervasive conduct. *Bowman*, 220 F.3d at 464. However, the various incidents in this case all allegedly occurred during a relatively short period of approximately four months. And in *Black*, the Sixth Circuit found that harassing comments at meetings every two weeks did not constitute severe or pervasive conduct. *Black*, 104 F.3d at 823. However, here, Temple testified that Pflunger's comments were more regular. *See also Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 252 (6th Cir. 1998) ("plaintiff's assertion that comments . . . were commonplace, ongoing, and continual establishes that the statements were more persuasive or widespread than the ones made in *Black*."). In short, there is ample evidence that Pflunger's alleged conduct was frequent.

As to the severity and nature of Pflunger's conduct, Temple is alleging more than simple teasing, offhand comments, and isolated incidents. Temple has testified that Pflunger repeatedly made sexually charged comments to her in the presence of others. DE 30, Temple Depo., pg. 345. Temple also testified that on a daily basis, Pflunger asked her why she would not have sex with him, but Temple "wouldn't give in" to Pflunger's sexual advances or dignify them with a response. DE 30, Temple Depo., pgs. 252, 263-64. Temple further testified that when Pflunger found out that she had complained to Fortune, Pflunger

7

threatened to "pound her [expletive] head in" and "kill her," before damaging her car with a medical instrument. DE 30, Temple Depo., pgs. 351-60. Temple later testified Pflunger "flew at [her]" and cursed at her for having her hair cut. DE 30, Temple Depo., pgs. 377. A reasonable jury could find that at least some of this conduct was "severe," "physically threatening," and/or "humiliating."

As to whether Pflunger's conduct unreasonably interfered with Temple's work performance, Temple testified that after Pflunger cursed at her for having her hair cut, she cried in fear of being fired. DE 30, Temple Depo., pgs. 383. Temple also testified that after she complained to Fortune twice about Pflunger's conduct, Pflunger became increasingly difficult to work with and multiple deals did not close. DE 30, Temple Depo., pgs. 362-63. Thus, the Court finds that Temple has created a genuine issue of material fact on this issue.

In light of the foregoing factors, Temple has shown that a reasonable jury could find that Pflunger's alleged behavior was "severe or pervasive" enough to create an environment that a reasonable person would find objectively hostile or abusive. Furthermore, based on the record before the Court, a reasonable jury could find that Temple subjectively perceived her work environment to be hostile or abusive. For these reasons, and because the question of "[w]hether harassing conduct is sufficiently severe or pervasive to establish a hostile work environment is 'quintessentially a question of fact,'" the Court finds that summary judgment on Temple's hostile work environment claim is not appropriate. *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 333 (6th Cir. 2008) (quoting *Jordan v. City of Cleveland*, 464 F.3d 584, 597 (6th Cir. 2006)).

### 3. Gender Discrimination Claim

Temple next asserts a gender discrimination claim against Stryker. Since Temple seeks to prove gender discrimination through circumstantial evidence, she must establish a prima facie case by showing: "(1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she

was qualified for the position; and (4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably." *Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007) (quoting *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004)). If Temple meets this initial burden of establishing a prima facie case, then the burden of production shifts to Stryker to articulate a legitimate, nondiscriminatory reason for Temple's discharge. *See Novotny v. Elsevier*, 291 F. App'x 698, 702 (6th Cir. 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If in turn Stryker provides a legitimate reason, the burden reverts to Temple to show that Stryker's alleged reason is a mere pretext for discrimination. *Novotny*, 291 F. App'x at 702 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Stryker argues that Temple has no evidence to satisfy the fourth element of her prima facie case of gender discrimination. The Court agrees. Temple puts forth no evidence that she was replaced by a male sales associate and she fails to compare her termination to how similarly situated male employees were treated. Instead, Temple seems to argue that Pflunger's alleged sexually charged comments, standing on their own, inherently show that Temple was treated less favorably than male employees in the same position.

Temple misinterprets what is required to establish a prima facie case of gender discrimination. In reality, "[a] prima facie case of discrimination in a discipline and discharge context may be established by the plaintiff's demonstrating that employees who are not of the same protected group were treated more leniently by the employer under comparable circumstances–that is, that they were not fired or were given lesser punishment for similar transgressions." 45B AM. JUR. 2D *Job Discrimination* § 933 (2011). Although Pflunger's alleged conduct allows some of Temple's other claims to survive summary judgment, it does not, by itself, make Temple's gender discrimination claim actionable. Since Temple has no evidence to satisfy the fourth element of her prima facie case of gender discrimination, the Court will dismiss this claim.

## 4. Retaliation Claim

Temple next asserts a retaliation claim against Stryker. To establish a prima facie case, Temple must show: (1) that she was engaged in an a protected activity; (2) that she was the subject of an adverse employment action; and (3) that a causal link existed between the protected activity and the adverse action. *Novotny*, 291 F. App'x at 704-05. Retaliatory discharge claims follow the *McDonnell Douglas* burden-shifting framework, in which Temple must first make out a prima facie case. *Id.* at 705. The burden then shifts to Stryker to give a legitimate, non-discriminatory explanation for its actions regarding Temple. *Id.* If Stryker satisfies its burden, the burden shifts back to Temple to demonstrate by a preponderance of the evidence that the proffered explanation is pretextual. *Id.*

As for Temple's prima facie case, Stryker's only argument is that Temple cannot establish a causal link between her complaint of sexual harassment and her employment termination because, according to Fortune, Temple did not tell him that Pflunger sexually harassed her until after Temple was terminated. DE 26, Exh. C-2, Fortune Depo., pgs. 101-03. However, Temple repeatedly testified that she complained about Pflunger's conduct to Fortune on August 11, 2008 and September 5, 2008–*before* she was terminated. In light of this evidence, and Temple's testimony that Pflunger threatened her when he found out that Temple had complained to Fortune, a reasonable jury could find that a causal link existed between Temple's complaints to Fortune and her termination. Thus, Temple has established a prima facie case of retaliation.

That being said, Stryker has met its burden of giving a legitimate, non-discriminatory explanation for terminating Temple. Stryker argues that it terminated Temple because of various alleged performance issues, including her lack of knowledge and expertise regarding Stryker Endoscopy equipment and surgical procedures, complaints Pflunger received from Stryker customers and employees regarding Temple's operating room behavior, and Temple's lack of professionalism and suitability for her position. DE 26, pgs.

18-19, 21 (citing various depositions and affidavits). Stryker also claims that the "final straw" was Temple's failure to properly clean and sterilize a Stryker hysteroscope resulting in probable permanent damage to the equipment. DE 26, Exh. B-2, Pflunger Depo., pgs. 122-24; DE 26, Exh. K, Pflunger Aff. ¶ 17.

In light of Stryker's evidence, the burden shifts back to Temple to demonstrate by a preponderance of the evidence that Stryker's explanation is pretextual. To show pretext, Temple "must demonstrate that the proffered reason: (1) has no basis in fact; (2) did not actually motivate the defendant's challenged conduct; or (3) was insufficient to warrant the challenged conduct." *Sanford v. Main Street Baptist Church Manor, Inc.*, 327 F. App'x 587, 599 (6th Cir. 2009) (internal quotations omitted). The Sixth Circuit has recognized that "pretext may be shown either directly by persuading [the trier of fact] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 601 (internal quotations omitted).

Temple argues that her performance was not the true reason for her termination. Temple emphasizes, and Stryker does not dispute, that Temple never received any oral or written warnings about her alleged substandard performance and never had any negative action taken against her because of her performance. In fact, Temple even testified that Pflunger told her she was awesome and thanked Temple. DE 30, Temple Depo., pg. 452. Temple also testified that the alleged "final straw" incident never happened and that she never gave Pflunger a hysteroscope without cleaning it. DE 29, Temple Depo., pgs. 172-73.

In light of the foregoing evidence, the Court finds that Temple has sufficiently met her burden in order to proceed past the summary judgment stage. As the Sixth Circuit has said, "[t]he role of the judge at the summary judgment stage is not to weigh the evidence, but to determine whether there is a genuine issue of material fact for trial." *City Management Corp. v. United States Chemical Co., Inc.*, 43 F.2d 244, 254 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Temple has

established a prima facie case of retaliation and has provided evidence that Stryker's proffered reason for her termination has no basis in fact, did not motivate Stryker's conduct, and/or is unworthy of credence. Therefore, Temple's retaliation claim survives summary judgment.

**B.     Common Law Claims**

Temple next asserts three common law claims against both Defendants. Again, the Court will consider these claims in the order in which they appear in Temple's Complaint [DE 6].

**1.     Wrongful Discharge Claim**

Temple asserts a wrongful discharge claim against both Defendants. Under Kentucky law, an employee has a cause of action for wrongful discharge when the discharge is contrary to a fundamental and well-defined public policy as evidenced by a constitutional or statutory provision. *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985). However, in wrongful discharge cases, "preemption occurs when the statutes that establish the well-defined public policy violation which supports the wrongful discharge pleading are the same statutes that establish a statutory cause of action for, and structure the remedy for, violations of that public policy." *Hill v. Kentucky Lottery Corp.*, 327 S.W.3d 412, 421 (Ky. 2010) (internal quotations omitted).

Temple's wrongful discharge claim against Stryker is preempted by her KCRA claims. Other than the KCRA, Temple cites no specific constitutional or statutory provision underpinning her wrongful discharge claim. Since the KCRA provides its own causes of action and remedies, the Court will dismiss Temple's wrongful discharge claim against Stryker. *See Grzyb*, 700 S.W.2d at 401.

As for Temple's wrongful discharge claim against Pflunger, the Court agrees with Pflunger that this claim fails as a matter of law. As Judge Russell has recognized, "under Kentucky law, a wrongful termination claim may only lie against Plaintiff's employer, not against Plaintiff's supervisor. Although supervisors appear to be liable for other torts in employment contexts . . . , the Court can find no Kentucky

12

case in which a plaintiff successfully asserted a claim for wrongful discharge against an individual supervisor." *Lorson v. Wal-Mart Stores, Inc.*, 2005 WL 1287421 (W.D. Ky. 2005). Therefore, the Court will also dismiss Temple's wrongful discharge claim against Pflunger.

## 2. Intentional Infliction of Emotional Distress Claim

Temple next asserts an IIED claim against both Defendants. However, Temple's IIED claim against Stryker will be dismissed because Temple now concedes that this claim is preempted by her KCRA claims. DE 27, pg. 21.

As for Temple's IIED claim against Pflunger, Temple must establish the following elements: (1) that Pflunger's conduct was intentional or reckless; (2) that Pflunger's conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; (3) that there is a causal connection between Pflunger's conduct and Temple's emotional distress; and (4) that Temple's emotional distress was severe. *See Kroger Co. v. Willgruber*, 920 S.W.2d 61, 65 (Ky. 1996). Temple's claim fails because she cannot establish that Pflunger's conduct was sufficiently outrageous and intolerable.

Temple asserts that Pflunger engaged in "clearly offensive and repetitive sexual remarks and pressure," as well as "physical threats and intimidation." DE 27, pg. 21. However, the Kentucky Supreme Court has made it clear that "'[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 789 (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)); *see also Kroger Co.*, 920 S.W.2d at 67 (finding liability where the alleged conduct was "carefully orchestrated in an attempt to bring [the plaintiff] to his knees"). It is well established that liability does not extend to mere threats and sexual comments and innuendos. *See Stringer*, 151 S.W.3d at 789; *Wathen v. General Electric Co.*, 115 F.3d 400, 407 (6th Cir. 1997). Thus, although the conduct alleged may be "crude and wholly inappropriate," it does

13

not rise to the level of actionable outrageous and intolerable conduct. *See Wathen*, 115 F.3d at 407. Accordingly, the Court will dismiss Temple's IIED claim against Pflunger.

### 3. Breach of Contract Claim

Without citing to specific portions of the record or any legal authority, Temple asserts a breach of contract claim against both Defendants. Temple does not dispute that she was an at-will employee and that the Sales Representative Agreement she signed contained an express at-will employment provision. DE 26, Ex. A, Temple Depo., pgs. 96-100; Exh. 5, 6, 7 at ¶ 5.3. Instead, Temple perfunctorily argues that Defendants' conduct in terminating her constitutes a breach of the implied covenant of good faith and fair dealing.

As an initial matter, Temple has not met her "affirmative duty to direct the court's attention to those specific portions of the record upon which [she] seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). But more importantly, Temple cites no legal authority undermining the fact that "Kentucky has no implied covenant of good faith and fair dealing with respect to employment rights." *Pierce v. Commercial Union Ins. Cos.*, 1999 WL 33756659, at *3 (W.D.Ky. 1999) (citing *Wyant v. SCM Corp.*, 692 S.W.2d 814 (Ky. Ct. App. 1985)). Furthermore, Temple's breach of contract claim against Pflunger fails as a matter of law because a contract is only binding upon the parties to a contract and there is no evidence that Temple had a contractual relationship with Pflunger, her supervisor. For these reasons, the Court will dismiss Temple's breach of contract claim against both Defendants.

### C. Punitive Damages

Since the Court will dismiss Temple's gender discrimination, wrongful discharge, IIED, and breach of contract claims, and the parties agree that punitive damages are not allowed under the KCRA, the final question is whether punitive damages are available under Temple's remaining Title VII claims.

Temple may only recover punitive damages under Title VII if Temple demonstrates that Stryker engaged in a discriminatory practice or discriminatory practices with malice or reckless indifference to Temple's federally protected rights. *See* 42 U.S.C. § 1981a(b)(1). However, the Supreme Court has said that "in the punitive damages context, an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good faith efforts to comply with Title VII." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 545 (1999) (internal quotations omitted). The Court recognized that "'the institution of a written sexual harassment policy goes a long way towards dispelling any claim about the employer's 'reckless' or 'malicious' state of mind.'" *Id.* (quoting *Harris v. L & L Wings, Inc.*, 132 F.3d 978, 984 (4th Cir. 1997)).

It is undisputed that when Stryker hired Temple, it provided her with a copy of Stryker's employee handbook which described the company's policies and procedures with respect to sexual harassment. DE 29, Temple Depo., pgs. 100-10; DE 26, Exh. A, PDF pgs. 51-55. The handbook included a code of conduct policy stating that Stryker would maintain a safe work place that was free from discrimination and harassment based on sex. *Id.* The handbook also stated that Stryker "will not tolerate retaliation against any employee who complains of harassment or provides information in connection with any such complaint." *Id.* Temple testified that she understood these policies and knew that she should report any harassing conduct to a Stryker manager or Stryker's human resources department. *Id.* Finally, Temple does not dispute that Stryker provided sexual harassment training to its sales managers. DE 26, Exh. C-1, Fortune Depo., pgs. 41-43. All of these facts suggest that Stryker made good faith efforts to comply with Title VII and thus, Temple should not be able to recover punitive damages.

That being said, Temple argues that she is eligible for punitive damages under Title VII because while Stryker may have had anti-harassment and anti-discrimination policies, it did not effectively *implement* those policies. In support, Temple cites *Fischer v. United Parcel Service, Inc.*, where the Sixth

15

Circuit said that "[t]o determine whether an employer engaged in good faith efforts to comply with Title VII, we focus 'both on whether the defendant employer had a written . . . policy and whether the employer effectively publicized and enforced its policy.'" *Fischer v. United Parcel Service, Inc.*, 390 F. App'x 465, 474 (6th Cir. 2010) (quoting *Parker v. Gen. Extrusions, Inc.*, 491 F.3d 596, 603 (6th Cir. 2007)). The Sixth Circuit also emphasized that "the mere existence of a written anti-discrimination policy alone does not shield the company from punitive damages. Rather, the employer must demonstrate that it engaged in good faith efforts to *implement* the policy." *Fischer*, 390 F. App'x at 474 (internal citations and quotations omitted) (emphasis in the original). Ultimately, in *Fischer*, the court reinstated a jury's punitive damage award, finding that

> UPS introduced evidence that it promulgated an anti-retaliation policy, trained its employees on implementing it, and established mechanisms for employees to lodge complaints. But UPS presented no record evidence from which a reasonable juror would necessarily conclude that UPS effectively advanced its policies. Unlike *Harsco*, where the plaintiff conceded that the company launched an investigation after the plaintiff complained, a reasonable member of [the plaintiff's] jury could find that UPS failed to investigate [the plaintiff's] complaint.

*Id.* at 475.

Temple's argument is well taken. Although Temple admits that Stryker had anti-harassment and anti-discrimination policies, Temple testified that she complained about Pflunger's conduct to Fortune on multiple occasions and even requested a transfer, but that Fortune merely said "he would handle it." DE 29, Temple Depo., pgs. 110, 194-206. Temple testified that Fortune never told her to contact human resources and never told her how he would resolve the situation. DE 29, Temple Depo., pg. 206. Although Fortune testified that Temple did not tell him about Pflunger's alleged conduct until after Temple was terminated, based on Temple's testimony there is evidence that Stryker did not effectively advance its anti-harassment and anti-discrimination policies. Therefore, at this time, the Court cannot dismiss Temple's claim for punitive damages against Stryker.

16

## IV. CONCLUSION

For the reasons set forth above, it is **HEREBY ORDERED** that Defendants' motion for summary judgment [DE 26] is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1) Defendants' motion is **GRANTED** to the extent that Temple's gender discrimination, wrongful discharge, IIED, and breach of contract claims are **DISMISSED**; and

(2) Defendants' motion is **DENIED** in all other respects.

(3) Since Temple's three remaining claims–quid pro quo sexual harassment, hostile work environment, and retaliation–are only against Defendant Stryker, Defendant Pflunger is **DISMISSED** as a party to this action.

Dated this 26th day of May, 2011.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge